# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

GEORGE WATSON-EL (#21461-424),  )
                                        )
       **Plaintiff,**           )
                                        )    No. 11 C 0740
   v.                             )
                                        )    Hon. James F. Holderman
ERIC WILSON, et al.,            )
                                        )
       **Defendants.**         )

## MEMORANDUM OPINION AND ORDER

The plaintiff, a federal prisoner, has brought this *pro se* civil rights action against correctional officials pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). The plaintiff additionally purports causes of action against the United States and prison physicians under the Federal Tort Claims Act (hereinafter, "the FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. The plaintiff alleges that correctional officials and health care providers at the Metropolitan Correctional Center wrongfully froze a deposit in his prison trust account; that as a result, he was denied needed medications because he was unable to pay for them; and that an investigator tried to leverage the plaintiff's plight by forcing him to become an informant. This matter is before the court for ruling on the defendants' motion to dismiss. For the reasons stated in this order, the motion is granted.

## STANDARD OF REVIEW

It is well established that *pro se* complaints are to be liberally construed. *Kaba v. Stepp*, 458 F.3d 678, 681, 687 (7th Cir. 2006). *Pro se* submissions are held to a less stringent standard than formal pleadings drafted by lawyers. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of

the claim showing that the pleader is entitled to relief," in order to " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008).

To satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), a plaintiff need only state his basic legal claim and provide "some indication . . . of time and place." *Thompson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004). In addition, when considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court assumes all factual allegations in the complaint to be true, viewing all facts–as well as any inferences reasonably drawn therefrom–in the light most favorable to the plaintiff. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010); *Bell Atlantic Corp.,* 550 U.S. at 563 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp.*, 550 U.S. at 556.

Nevertheless, the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp.*, 550 U.S. at 555. While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp.*, 550 U.S. at 555 (citations omitted). The court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578

F.3d 574, 581 (7th Cir. 2009). "The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010) (citing *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009)). Furthermore, a plaintiff can plead himself or herself out of court by pleading facts that undermine the allegations set forth in the complaint. *See, e.g., Whitlock v. Brown*, 596 F.3d 406, 412 (7th Cir. 2010) (citations omitted): "A judicial admission trumps evidence. This is the basis of the principle that a plaintiff can plead himself out of court."

## FACTS AND BACKGROUND

The plaintiff is a federal prisoner, confined at the Metropolitan Correctional Center (hereinafter, "MCC") in Chicago, Illinois, at all times relevant to this action. Defendant Robert Johnson is a Special Intelligence Officer at MCC. Defendant Deborah Lamping is the Administrator of Health Services at MCC. Defendant Paul Harvey is the facility's clinical director. Defendant Roberto Aruiza is a staff physician at the prison. Defendant Eric Wilson is MCC's Warden.

The plaintiff alleges the following facts, which are assumed true for purposes of this motion: In August of 2007, defendant Johnson requested that a hold be placed on a $75.00 deposit into the plaintiff's commissary account. Defendant Wilson approved the encumbrance.[1]

In March 2008, the plaintiff was prescribed acetaminophen with codeine, naproxen sodium, and penicillin by his treating physician due to complications from a dental surgery.

---

[1]Summary judgment materials on file in *Watson-El v. Wilson*, Case No. 08 C 7036 (N.D. Ill.), as well as exhibits to the amended complaint in this case, reveal that the plaintiff received the $75.00 from an individual whose telephone number appeared on the call list of another inmate. Johnson therefore requested the hold pending an investigation. Prison officials ultimately determined that the depositor of the funds was the other inmate's common-law wife.

Defendant Aruiza missed dispensing a dose of medication, which caused the prescription term to be extended.

At the end of March 2008, the plaintiff went to "sick call" complaining of severe stomach pains. Defendant Aruiza directed the plaintiff to take Zantac, which could be purchased through the prison commissary. Aruiza refused to prescribe the medication[2] at the facility's expense because he believed that the plaintiff was not indigent. Evidently, the $75.00 appeared on the plaintiff's trust account ledger as money available to him despite the encumbrance; thus, the plaintiff was placed in the predicament of not qualifying as indigent but also not permitted to spend the money in his trust fund account. On a previous occasion, defendant Harvey had prescribed Zantac for the plaintiff even though he had money in his account available to him at the time.

Institutional rules require that over-the-counter medications be provided to inmates who do not have funds in their commissary account. Under prison guidelines, Mylanta, Maalox, and simethicone (medications similar to Zantac) are considered "medically necessary" over-the-counter medications that are to be provided to indigent inmates.

On April 1, 2008, the plaintiff sent an inmate request to the assistant warden asking for the $75.00 encumbrance to be lifted, declaring that he needed money to purchase medication for his acid reflux. Defendant Lamping denied the request, telling the plaintiff to buy Zantac from the commissary.

---

[2]Zantac, an antacid used to treat heartburn, ulcers, gastric reflux, and other conditions, is available both over-the-counter and, in stronger doses, by prescription. *See Physicians' Desk Reference*, 5th ed. (2005).

On April 3, 2008, the plaintiff had a meeting with defendant Johnson. Johnson agreed to release the plaintiff's funds in increments on the condition that the plaintiff provide Johnson with information about contraband cell phones, drugs, cigarettes, and liquor. When the plaintiff professed that he had "no knowledge of such things," Johnson warned him that, in that case, he had "better get used to having heartburn." (Amended Complaint, p. 7-B, ¶ 12.)

On April 6, 2008, the plaintiff began the administrative exhaustion process.

On May 10, 2008, the plaintiff submitted another request for a prescription for Zantac because he was still suffering from severe stomach pains. The request was denied and he was once again referred to the commissary. The plaintiff went without medication from March 31, 2008, through June 12, 2008. In the interim, the plaintiff was charged $2.00 each time he signed up for sick call whether or not he had funds in his account. He suffered stomach pains, burning, and irregular sleep during this time period.

On June 12, 2008, the plaintiff was diagnosed with a possible ulcer and prescribed ranitidine. He remained unable to buy any non-prescription medication through November 2008.

In December 2008, the plaintiff filed a lawsuit raising the same, basic claims presented in this case, as well as claims arising from his inability to purchase religious items or make telephone calls due to the $75.00 encumbrance. *See Watson-El v. Watson*, Case No. 08 C 7036 (N.D. Ill.) (Complaint, document no. 1).

In January 2010, the plaintiff began the administrative tort claim process.

On September 15, 2010, the court granted the defendants' motion for summary judgment in Case No. 08 C 7036. *See Watson-El*, No. 08 C 7036, Memorandum Opinion and Order of

September 15, 2010 (Holderman, J.) (document no. 87). The court dismissed the plaintiff's FTCA claim pursuant to 28 U.S.C. § 2675(a) for failure to exhaust administrative tort remedies prior to bringing suit. *Id.* The court dismissed the plaintiff's retaliation/coercion claim pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust grievance procedures prior to filing suit. *Id.* The court likewise dismissed the plaintiff's medical and religious claims for non-exhaustion or, in the alternative, granted summary judgment in favor of the defendants on those claims on substantive grounds. *Id.*

The plaintiff refiled suit on February 1, 2011, after completing the PLRA and FTCA administrative exhaustion processes. *See* Preface to Amended Complaint, p. 6.

## ANALYSIS

Even accepting the factual allegations in the amended complaint as true, the court finds that plaintiff has no actionable claim. The plaintiff's FTCA claim against the United States is barred by the discretionary function exception to liability. The plaintiff's medical claims under the FTCA and *Bivens* are barred by the doctrine of *res judicata*. The plaintiff's retaliation claim is without merit because there was a valid reason for putting an encumbrance on the deposit, irrespective of the plaintiff's cooperation or non-cooperation in defendant Johnson's investigation.

### I. The Plaintiff's Federal Tort Claim Against the United States

The plaintiff has no tenable basis for suit against the United States, as his federal tort claim regarding the encumbrance falls within the discretionary function exception to FTCA liability. Under 28 U.S.C. § 2680(a), the provisions of the Federal Tort Claims Act do not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform

a discretionary function or duty . . . whether or not the discretion involved be abused." As the court previously suggested to the plaintiff in dicta–and as the plaintiff was advised at nearly every step of the administrative review process–defendant Wilson had unfettered discretion to freeze a suspicious deposit into the plaintiff's commissary account by the common-law wife of another inmate. *See also* BOP program statement 4500.05 § 8.9: "All encumbrances are at the Warden's discretion or the result of a disciplinary hearing sanction. . . . Funds the Warden encumbers may only be released upon his/her approval or upon inmate release."

The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Palay v. United States*, 349 F.3d 418, 427 (7th Cir. 2003), citing *United States v. Gaubert*, 499 U.S. 315, 323 (1991); *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). In order for the exception to apply, two requirements must be met. *Palay*, 349 F.3d at 427. "First, as its label suggests, this exception shields the government from suit only when the complained-of act is discretionary in the sense that it 'involves an element of judgment or choice.' " *Ibid.*, quoting *Gaubert*, 499 U.S. at 322. Second, the exception "protects only governmental actions and decisions based on considerations of public policy." *Palay*, 349 F.3d at 427-28, citing *Gaubert*, 499 U.S. at 323; *see also Calderon v. United States*, 123 F.3d 947, 949 (7th Cir. 1997).

The defendants have already demonstrated in connection with the plaintiff's prior lawsuit that, as a matter of policy, deposits are frozen pending investigation when they are discovered to be from sources attributable to another inmate. The Bureau of Prisons offers several rationales behind the provision prohibiting unrelated inmates from channeling money to each other. (*See*

Defendants' Exhibit 10, Affidavit of Antonio Salas, MCC Captain, ¶ 3, document no. 59-2 in Case No. 08 C 7036.) The purpose of the regulation is to prevent illegal activity among inmates and to ensure the safety and security of the inmates and the institution. (*Ibid.*) Inmates are not allowed to receive funds from another inmate or another inmate's family members because the money could be exchanged for contraband or "favors." (*Ibid.*) In addition, inmates can extort money from fellow prisoners for providing protection or because they have some other advantage that gives them power over another inmate. (*Ibid.*) In Salas' experience, such transfers between unrelated inmates invariably tend to indicate illegal activity. (*Ibid.*)

The defendants have set forth several bona fide policy reasons for mistrusting deposits from one inmate's family into the prison trust fund account of an unrelated fellow prisoner. Extortion, protection money, and illegal bartering are certainly all legitimate penological concerns. The $75.00 encumbrance is precisely the type of action that is shielded by the discretionary function exception to the FTCA. *Compare Palay, supra*, 349 F.3d 418 (decision to transfer inmate from a pretrial unit to a holdover unit housing convicted inmates reflected an exercise of discretion grounded in policy considerations); *Calderon, supra*, 123 F.3d 947 (decision by BOP personnel not to separate two inmates and not to punish one of the inmates for making threats fit within the discretionary function exception); *see also Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) ("If it is determined that the actions of the Bureau of Prisons involved discretion, the discretionary function exception will serve to protect the government from suit, even if the Bureau of Prisons abused its discretion or was negligent in the performance of its discretionary functions").

In sum, the discretionary function exception to FTCA liability immunizes Warden Wilson from suit regarding the day-to-day operational decision to freeze a suspect deposit. The plaintiff's FTCA claim against the United States is accordingly dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II. The Plaintiff's Bivens Claims Against the Individual Defendants

The plaintiff's medical claim, whether he is suing under the FTCA or *Bivens*, is barred by the doctrine of *res judicata*; his "retaliation" claim is without merit because there was a valid reason for the encumbrance, regardless of defendant Johnson's underlying motives.

### A. The Plaintiff's Medical Claim

The plaintiff's Eighth Amendment medical claim is barred by *res judicata*. Under principles of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Highway J Citizens Group v. United States Dept. of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). In Illinois, there are three requirements for *res judicata* to apply: "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits." *Highway J*, 456 F.3d at 741. "If these requirements are fulfilled, *res judicata* 'bars not only those issues which were actually decided in a prior suit, but also all other issues which could have been raised in that action.' " *Ibid.* (citation omitted).

In the case at bar, the plaintiff's medical claim meets all three prongs. The plaintiff refiled suit naming the same, exact defendants as in Case No. 08 C 7036. He has raised claims emerging from "the same core of operative facts as that earlier action." *Id.* (citation omitted).

"[T]wo claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations." *Tartt v. Northwest Community Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006) (citations omitted). In other words, "a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999). Finally, this court decided that claim on its merits. The plaintiff had a full and fair opportunity to litigate his medical claim.

The plaintiff is mistaken in his apparent belief that his medical claim was dismissed only for failure to exhaust administrative remedies. Because there was some dispute over exhaustion, the court went on, in the alternative, to grant summary judgment on substantive grounds, finding that he had no objectively serious need for purposes of Eighth Amendment analysis and that the defendants, in any event, did not act with deliberate indifference. *See Watson-El*, No. 08 C 7036, Memorandum Opinion and Order of September 15, 2010, at pp. 20-25 (Holderman, J.). The court specifically stated that "there [was] insufficient evidence of deliberate indifference to a serious medical need for the matter to go to a jury," *id.* at p. 20, that the plaintiff's acid reflux was "not a matter of the gravity contemplated by *Estelle* and its progeny," *id.* at p. 23, and that the plaintiff's difference of opinion with treating physicians over the treatment for what they considered a "relatively minor, symptomatic ailment" was not "enough to prove deliberate indifference." *Id.*, p. 23.

The court's previous finding that the plaintiff had no triable claim, ignoring exhaustion concerns, constituted a final determination on the merits. If the plaintiff was dissatisfied with

that decision, he could have appealed. However, the court's ruling foreclosed bringing another suit reasserting the same, basic allegations.

Simply recasting his medical claims under the Federal Tort Claims Act instead of *Bivens* does not help the plaintiff. Where, as here, the central factual issues are identical, claim preclusion takes effect even if the plaintiff sues under a different legal theory. *Highway J*, 456 F.3d at 743-44; *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995). The court cannot entertain the plaintiff's duplicative medical claim.

The plaintiff asserts an additional, unrelated claim against Aruiza: he maintains that in March 2008, Aruiza failed to dispense a dose of penicillin one day following dental surgery, which caused the prescription term to be extended. Antibiotics are frequently prescribed after dental surgery to prevent infection. However, nothing in the amended complaint suggests either that Aruiza acted with deliberate indifference, or that the single missed dose placed the plaintiff in serious jeopardy or caused permanent harm. *See, e.g., Helling v. McKinney*, 509 U.S. 25, 32 (1993) ("In *Estelle* [*v. Gamble*, 429 U.S. 97 (1976)], we concluded that . . . accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment"); *see also Grieveson v. Anderson*, 538 F.3d 763, 779-780 (7th Cir. 2008) ("a negligent or inadvertent failure to provide adequate medical care is insufficient to state a deliberate indifference claim"). Under the circumstances described, an inadvertent failure to dispense medication on a single occasion did not rise to the level of a constitutional violation.

**B. The Plaintiff's Retaliation/Coercion Claim**

Finally, the defendants incorrectly argue that the plaintiff's retaliation/coercion claim was resolved on the merits; it was dismissed only for failure to exhaust administrative remedies. Nevertheless, that claim must now be dismissed for lack of merit.

Certainly, "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Walker v. Thompson*, 288 F.3d 1005, 1008-1009 (7th Cir. 2002). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

Prisoners' grievances are protected by the First Amendment. *See, e.g.*, *Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000). A prisoner is entitled to take advantage of grievance procedures without fear of recrimination, and if a prison official retaliates, he violates the inmate's First Amendment rights. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). A plaintiff claiming retaliation must allege that: (1) his or her conduct was constitutionally protected, and (2) his or her conduct was a "substantial factor" or "motivating factor" in the defendants' challenged actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

In the case at bar, the plaintiff will not be able to establish that the encumbrance was the result of his grievances or any other protected activity; to the contrary, all of his grievances were after the fact of the encumbrance and specifically concerned the $75.00 hold. The plaintiff cannot reasonably argue that the encumbrance was in "retaliation" for his pursuit of administrative remedies when the encumbrance, in fact, **triggered** the grievances. Being denied the relief sought in a grievance is not equivalent to being retaliated against for filing the grievance. Otherwise, the denial of every grievance could form the basis for a 1983 or *Bivens* action. The chronology of events does not support an inference of retaliation.

For the same reasons, the plaintiff will be unable to prove that the encumbrance was in retaliation for his refusal to be a "snitch." Johnson's alleged actions after the encumbrance went into effect cannot be attributed to retaliation. "[A] *Bivens* (or § 1983) plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action." *Hartman v. Moore*, 547 U.S. 250, 259 (2006), citing *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998); *Mt. Healthy City School Dist. Bd. of Education v. Doyle*, 429 U.S. 274, 285–287 (1977). "It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Ibid.*, citing *Crawford–El, supra*, 523 U.S. at 593; *Mt. Healthy*, *supra*, 429 U.S. at 285–286.

According to Program Statement 2002.02 of the BOP's Accounting Management Manual, "Money may only be transferred from the account of one inmate to another when the inmates are close relatives and the Warden approves the transfer of funds in writing." Here, there is no dispute that Warden Wilson froze the $75.00 deposit because it was made by the wife of another inmate. It is beyond question that the defendants would have placed a hold on the money irrespective of Johnson's interest in weeding out contraband. *Compare Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) (even if prison guards who performed a humiliating, non-routine search were partly motivated by the plaintiff's grievances about prior, routine searches, they would not be liable for retaliation if a jury believed that they would have performed the extended search "no matter what"). "If the same action would have occurred regardless of the retaliatory motive, the claim fails." *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004).

Johnson's alleged attempt to dangle the $75.00 as an incentive for the plaintiff to cooperate in an investigation cannot fairly be characterized as "retaliatory" action. It is not uncommon for police and prosecutors to offer deals to suspects in exchange for information. The plaintiff was perfectly entitled not to accept Johnson's proposed deal, but in the absence of his cooperation, Johnson, in turn, had no obligation to ask the warden to release the questionable deposit. Because there was a legitimate, non-retaliatory basis for suspending the encumbrance in the first place, the defendants' refusal to undo the hold is not actionable as retaliation.

The court recognizes that at the pleading stage of proceedings, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005), *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But the court will not examine the amended complaint in this case in a vacuum; the record on file in the plaintiff's prior lawsuit was sufficiently developed for the court to find now that it would be a waste of time and resources for the parties to brief another summary judgment motion on a claim that will go nowhere. Whether or not defendant Johnson tried to use the encumbrance to exert pressure on the plaintiff, defendant Wilson had complete discretion to freeze the suspicious deposit. The court rejects the plaintiff's attempt to constitutionalize his claim by crying "retaliation."

## **CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss the amended complaint for failure to state a claim is granted. The plaintiff is warned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he

may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another "strike."

IT IS THEREFORE ORDERED that the defendants' motion to dismiss [#14] is granted. The complaint is dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The case is terminated. This dismissal counts as one of the plaintiff's three allotted dismissals under 28 U.S.C. § 1915(g).

Enter: *James F. Holderman*

JAMES F. HOLDERMAN
Chief United States District Judge

Date: July 21, 2011